NOT FOR PUBLICATION [1]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
JAMES V. SASSANO,                   :     Civil Action No. 05-5258
                                    :
        Petitioner,                 :     OPINION
    v.                              :
                                    :
DEVON BROWN, Commissioner of New    :
Jersey Department of Corrections, JOSEPH :
W. OXLEY, Monmouth County Sheriff,  :
RONALD J. BONAFORTE, Warden,        :
Monmouth County Correctional        :
Institution, LUIS A. VALENTIN,      :
Monmouth County Prosecutor, and PETER :
C. HARVEY, Attorney General of the State :
of New Jersey,                      :
                                    :
        Respondents.                :
_____ :

**WOLFSON, UNITED STATES DISTRICT JUDGE**

Petitioner James V. Sassano ("Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging a judgment of conviction in the Wall Township Municipal Court, based upon the court's failure to provide him a jury, in connection with his trial for a third offense of driving while intoxicated. Respondents filed an Answer, arguing that the Petition should be dismissed on the merits. For the reasons expressed below, the Court dismisses the Petition with prejudice and denies a certificate of appealability. See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

**I.      BACKGROUND**

1

Petitioner challenges a judgment of conviction filed on May 24, 2004 in the Wall Township Municipal Court. Following the denial of Petitioner's motion for a jury trial, Petitioner was convicted by Municipal Court Judge Evan W. Broadbelt of driving while intoxicated (DWI), reckless driving, and failure to maintain a lane of travel. Petitioner also plead guilty to the charge of no insurance card in possession. Because the DWI offense was Petitioner's third such offense, Judge Broadbelt imposed a jail sentence of 180 days, a revocation of Petitioner's license and registration for ten years, a fine of $1000, and $355 in costs, penalties, and surcharges.[1] For driving without an insurance card, Judge Broadbelt imposed a $150 fine and $30 in court costs, and for reckless driving and failure to maintain a lane, Judge Broadbelt imposed a $200 fine and $30 in court costs on each complaint. Petitioner appealed his DWI conviction to the Superior Court, Law Division, and on September 24, 2004, Judge Anthony J. Mellaci found Petitioner guilty and imposed the same sentence that had been imposed by the Municipal Court.[2] Petitioner further appealed his conviction to the Superior Court, Appellate Division, and on July 12, 2005, the Appellate Division affirmed Petitioner's conviction and sentence. On October 26, 2005, the New Jersey Supreme Court denied Petitioner's petition for certification. Petitioner raised the jury trial issue in his appeals to the Superior Court, Law Division and the Superior Court, Appellate Division, as well as in his petition for certification to the New Jersey Supreme Court.

---

[1] Petitioner was ordered to pay $30 in court costs, a penalty of $100 to the Drunk Driving Enforcement Fund, $75 to the Safe Neighborhood Fund, $50 to the Crime Compensation Board, and an additional $100 state surcharge.

[2] Judge Mellaci also vacated the penalties for reckless driving and failing to maintain a lane, and merged them into the DWI conviction.

On November 4, 2005, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he was denied a jury trial in violation of the Sixth Amendment.  That same day, Petitioner filed an order to show cause seeking a stay of the custodial portion of the sentence pending the decision of this Court on the habeas corpus petition.  On November 10, 2005, the Honorable Stanley R. Chesler, U.S.D.J., denied Petitioner's application for a stay of his sentence pending the disposition of this petition.

## II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).[3]

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply

---

[3]While the parties do not raise this issue, the Court notes that the Petition is not moot even though Petitioner has completed his jail sentence.  See Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968).

3

inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"). Nor may the Court recharacterize a ground asserted under state law as a federal constitutional claim. See Engle, 456 U.S. at 119-20 n. 19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 n. 10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights). Here, Petitioner asserted his right to a jury trial under the Sixth Amendment of the Constitution at all levels in the state courts, and thus, the issue may be considered.

A district court must give deference to determinations of state courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002).

Where a federal claim was "adjudicated on the merits"[4] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  The claim presented here is a legal one.  Thus, the analysis focuses only on Section 2254(d)(1).

A decision is "contrary to" a Supreme Court holding if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.  In that regard, "decisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court

---

[4] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom, Rompilla v. Beard, 545 U.S. 374 (2005).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  Rompilla, 355 F.3d at 247.

precedent, as well as helpful amplifications of that precedent." Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002) (citations and internal quotation marks omitted).

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.   DISCUSSION

Petitioner asserts that he was denied a jury trial in violation of the Sixth Amendment. In particular, Petitioner argues that he is entitled to a jury trial because the aggregate maximum jail time for three of the offenses that he was charged with is 255 days.[5] Petitioner further argues that he is entitled to a jury trial because of the severe penalties, other than imprisonment, that New Jersey imposes on third-time DWI offenders.

The United States Supreme Court has held that an offense with a maximum prison term of six months or less is presumed petty, and therefore does not warrant a jury trial, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious. Lewis v. United States, 518 U.S. 322, 326 (1996) (citing Blanton v. North Las Vegas, 489 U.S. 538, 542 (1989)). In Lewis, the Court also held that, in assessing whether the maximum prison term is greater than six months, the prison terms

---

[5] Petitioner faced 180 days in jail as a third-time DWI offender, 60 days for reckless driving, and 15 days for failure to maintain lane.

for multiple petty offenses are not viewed in the aggregate. 518 U.S. at 326-27. Therefore, in the present case, the Court does not look to the 255-day aggregate maximum prison term, for all of the offenses that Petitioner was convicted of, in assessing whether a jury trial is warranted. Rather, the Court considers the 180-day maximum prison term for the third-time DWI offense. The Court must, however, also consider the ten-year revocation of Petitioner's license and registration, $1000 fine, and $355 in costs, penalties, and surcharges that were imposed on Petitioner for the third-time DWI offense, to determine whether these additional penalties are so severe as to consider the offense serious. See Lewis, 578 U.S. at 326.

In Blanton v. North Las Vegas, 489 U.S. 538, 543-44 (1989), the Court found that the additional statutory penalties for driving under the influence in Nevada, including a $1000 fine and a 90-day license suspension, did not constitute "the rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-month incarceration line.'" In State v. Hamm, 577 A.2d 1259, 1267 (N.J. 1990), the New Jersey Supreme Court held that a third DWI offense, with potential penalties of a $1000 fine, ten-year license suspension, and 180 days of incarceration, did not run afoul of Blanton. Although the New Jersey Supreme Court noted that a third DWI offense in New Jersey resulted in a license suspension of ten years, whereas the Nevada law at issue in Blanton provided for a license suspension of only ninety days, that difference in penalty did not convince the Court that a different result was warranted. Id. at 1266. Instead, the New Jersey Supreme Court also reviewed the history of DWI in New Jersey, and noted that a ten-year license suspension had been in effect for long periods of time, while during other periods repeat offenders had been subject to a final revocation of their licenses. Id. at 1264-67. The Court in Hamm thus

7

concluded that the ten-year license suspension at issue did not indicate that the legislature viewed the offense as serious, but rather, reflected "a shifting social conclusion about what works best with DWI offenders." Id. at 1267.

The Court in Hamm also stated that the legislature's historic confinement of the maximum term of imprisonment to 180 days was presumably intentional and a reflection of legislative intent to continue to treat DWI as a motor vehicle offense and not a crime. Id. at 1268. Furthermore, the Court found it significant that the New Jersey DWI law did not make a six-month incarceration automatic for a third offense, and that it also allowed for alternatives to incarceration, with a strong emphasis on community service and rehabilitative alternatives. Id. at 1269. The Court in Hamm concluded by noting that under the spectrum of values that Blanton appears to embrace, in which there is less room for other penalties as the DWI system approaches the six-month incarceration line, a jury trial was not required for a third DWI offense, given the rehabilitative emphasis of the New Jersey statute. Id. at 1270.

In the present case, Petitioner requested a jury trial in Municipal Court based on the aggregate potential jail time for the three offenses that Petitioner was charged with, as well as the argument that a DWI offense is so packed with other penalties that a jury trial is required. Municipal Court Judge Broadbelt denied this request, stating on the record that "[t]he Supreme Court has already ruled there is no right to a jury trial on these violations." State v. Sassano, Trial Tr. 5 (Wall Township Mun. Ct., May 10, 2004). Petitioner then requested a jury trial in the Superior Court, Law Division, arguing that the penalties for DWI have changed such that State v. Hamm no longer controls. State v. Sassano, Appeal Tr. 9-10 (N.J. Super. Ct. Law Div., September 24, 2004). Petitioner pointed to surcharges and penalties payable to the Victims of

8

Crime Compensation Board and the Safe Neighborhood Fund, as well as the added requirement that a third-time offender install an ignition interlock device or have his registration revoked for ten years.  Id. at 10-11.  Superior Court Judge Mellaci denied Petitioner's request, noting that the 180-day jail term for a third DWI offense was in effect when Hamm was decided and that "[i]t is the liberty portion of the sentence that our Courts have indicated engenders the jury trial."  Id. at 10-13.

In his brief to the Appellate Division, Petitioner requested a jury trial on the basis of the aggregate jail time for the three offenses, as well as the argument that a DWI offense is so packed with other penalties that a jury trial is required.  Petitioner also argued that Hamm was no longer controlling because of changes to the New Jersey DWI law subsequent to Hamm.  In particular, Petitioner cited added court costs; penalties payable to the Victims of Crime Compensation Board, Safe Neighborhoods Services Fund, Body Armor Replacement Fund, and Spinal Cord Research Fund; the added requirement that third-time offenders serve their time in a jail or workhouse and not through a work release program; the installation of an ignition interlock device for one to three years for repeat offenders; penalties for failure to install an interlock device ordered by the court; and penalties for driving with a refused, suspended, revoked, or prohibited license.  Petitioner also argued that he had a right to a civil jury because of Motor Vehicle Commission surcharges for DWI convictions.

The Appellate Division affirmed the denial of Petitioner's motion for a jury trial, stating that "with regard to the right to a jury trial, the cases are clear that so long as DWI remains a Title 39 offense, a jury trial is neither statutorily nor constitutionally required because the offense is not deemed to be a criminal offense or a serious enough crime to implicate Sixth Amendment

rights. State v. Stanton, 176 N.J. 75, 88 (2003); State v. Hamm, 121 N.J. 109 (1990), cert. denied, 499 U.S. 947, 111 S. Ct. 1413, 113 L. Ed. 2d 466 (1991). Defendant has failed to articulate any basis to distinguish this legal precedent." State v. Sassano, Slip Op. at 11-12 (N.J. Super. Ct. App. Div., July 12, 2005).

Under Lewis and Blanton, Petitioner's third DWI offense, with a maximum prison sentence of 180 days, is presumed a petty offense unless the legislature has packed the offense with such severe penalties that a jury trial is required. See Lewis, 518 U.S. at 326; Blanton, 489 U.S. at 542. Petitioner argues that the surcharges and monetary sanctions, as well as the $1000 fine and ten-year license and registration revocation, are such severe penalties that a jury trial is required under Blanton. In Hamm, the New Jersey Supreme Court addressed this federal constitutional question, and concluded that under Blanton the $1000 fine, ten-year license suspension, and surcharges imposed for a third DWI offense did not reflect a determination by the New Jersey legislature that a jury trial was necessary. 577 A.2d at 1267.

Petitioner asserts that Hamm's Sixth Amendment analysis is no longer valid because of subsequent changes to the New Jersey law on DWI. Petitioner points to numerous amendments to the New Jersey DWI law, including the requirement that imprisonment for a third offense be in a jail or workhouse, and not through non-custodial alternatives such as work release or outpatient rehabilitation programs.[6] See N.J.S.A. § 39:4-50(a)(3) (2004). In contrast, the Court

---

[6] In his petition, Petitioner cites the added requirement that the imprisonment for a third DWI offense be in a jail or workhouse, and not through work release. In his application for an order to show cause, Petitioner cites monetary sanctions, court costs, the installation of an ignition interlock device for one to three years, penalties for failing to install an ignition interlock device if ordered by the court, and penalties for driving with a suspended license. In the application for an order to show cause, Petitioner also argues that he has a right to a civil jury because of insurance plan surcharges for DWI convictions.

10

in Hamm relied in part on the fact that "Hamm will serve no county-jail time; his sentence is split between community service and rehabilitation" in finding that the Blanton criteria were not violated. 577 A.2d at 1270. On the other hand, N.J.S.A. § 39:4-50(a)(3) still imposes 180 days of imprisonment on a third-time DWI offender, which the Court in Hamm interpreted as a sign of legislative intent not to invoke the right to trial by jury. See Hamm, 577 A.2d at 1268. In addition, the amended New Jersey DWI law provides a discretionary credit of up to 90 days for time spent in an inpatient alcohol rehabilitation facility. See N.J.S.A. § 39:4-50(a)(3) (2004).

In Hamm, the New Jersey Supreme Court noted that the question of whether a jury trial was warranted for a DWI offense "is not an easy question" and that "[i]t may be that the Supreme Court will draw a bright line to guide states in DWI cases." 577 A.2d at 1270. The Court further noted that "[o]ther courts have concluded that DWI is a serious offense requiring jury trial." Id. In particular, the Court cited Richter v. Fairbanks, 903 F.2d 1202, 1205 (8th Cir. 1990), in which the Eighth Circuit held that a jury trial was required under Blanton where the maximum imprisonment was six months but a fifteen-year driver's license revocation and $500 fine were also mandated. While noting Richter, the Court in Hamm found that in light of the history of DWI in New Jersey, the ten-year license suspension at issue "does not in any sense reflect a significant escalation of the seriousness with which New Jersey's Legislature regards this offense, but rather a shifting social conclusion about what works best with DWI offenders." Hamm, 577 A.2d at 1267. "The ten-year license suspension for third offenders, although in itself a heavy burden, is both precautionary and penal." Id. at 1269.

The Court in Hamm also noted United States v. Craner, 652 F.2d 23, 25 (9th Cir. 1981), in which the Ninth Circuit held that a jury trial was required when the defendant faced a possible

six months of imprisonment and/or a $500 fine under a federal regulation against driving under the influence in national parks.  However, the Ninth Circuit's holding in Craner was based in part on a finding that the six-month maximum penalty did not reflect a considered legislative judgment of the gravity of the offense, in light of the "Secretary [of the Interior]'s indiscriminate authorization of this penalty for varied offenses."  Id.  In contrast, the Court in Hamm found that the six-month penalty in the New Jersey DWI law did reflect a legislative determination that the offense should be considered a petty offense.  Hamm, 577 A.2d at 1268.  Furthermore, both Craner and State v. O'Brien, 704 P.2d 883, 886 (Haw. 1985) (jury trial required for DUI in Hawaii, where law imposed 14-hour rehabilitation program, 90-day license suspension, and one or more of (1) seventy-two hours of community service, (2) not less than forty-eight hours of imprisonment, or (3) a fine between $150 and $1000 on a first-time offender), which was also noted in Hamm, were decided prior to Blanton, in which the Supreme Court held that similar penalties did not warrant a jury trial.  See Blanton, 489 U.S. at 543-44.

   In the present case, this Court declines to hold that Hamm's Sixth Amendment analysis is no longer valid.  While noting the changes in the New Jersey DWI law since Hamm, the Court is reluctant to conclude that these changes indicate that the legislature considered the offense serious under Blanton.  "Absent, then, clear constitutional requirement, reclassification of DWI as an offense to which trial by jury may attach should properly be by legislative, rather than judicial, judgment."  Hamm, 577 A.2d at 1269.  "The Blanton Court cautioned that '[t]he judiciary should not substitute its judgment as to seriousness for that of a legislature * * *.'"  Id. (citing Blanton).  Moreover, the New Jersey Supreme Court recently stated, thirteen years after its decision in Hamm, that "there is no right to trial by jury of DWI or other Title 39 offenses

12

because they are not deemed to be serious enough." State v. Stanton, 820 A.2d 637, 645 (N.J. 2003) (citing Blanton, 489 U.S. at 543-44, and Hamm, 577 A.2d at 1259).  In deciding that there was no right to a jury trial on the issue of intoxication for sentence enhancement purposes, the Court in Stanton cited the legislative history of the New Jersey law on DWI and stated that "[a]ny change in the law to require trial by jury on DWI and other Title 39 offenses 'should properly be by legislative, rather than judicial, judgment.'"  820 A.2d at 653 (quoting Hamm, 577 A.2d at 1259).  New Jersey appellate courts have also continued to follow Hamm.  See, e.g., State v. Sanborn, 2006 WL 2795074, at *11 (N.J. Super. Ct. App. Div. 2006) ("The Legislature has amended the DWI statute since Hamm was decided, but it never enhanced the term of imprisonment to exceed six months and has continued to treat the DWI statute as a 'non-criminal offense.'  We are satisfied, therefore, that any reconsideration of Hamm must come from the Supreme Court.  Accordingly, Hamm continues to control this issue.  Defendant was not entitled to a jury trial."); State v. Wall, 2006 WL 2827386, at *3 (N.J. Super. Ct. App. Div. 2006) ("Even the greater penalties imposed on a third offender are insufficient to require a jury trial.  State v. Hamm, 121 N.J. 109, 128-30 (1990).  We are bound by those decisions.  Bell Atl. Network Servs. v. P.M. Video Corp., 322 N.J. Super. 74, 98-99 (App. Div.), certif. denied, 162 N.J. 130 (1999).").  Moreover, it is clear that the New Jersey Supreme Court has not elected to revisit its decision in Hamm, since it denied Sassano's petition for certification, here.

Furthermore, as in Hamm and Blanton, this Court does not find that the penalties relied on by Petitioner constitute "the rare situation where a legislature packs an offense it deems 'serious' with onerous penalties that nonetheless 'do not puncture the 6-month incarceration line.'"  See Blanton, 489 U.S. at 543-44.  While Petitioner was subject to a ten-year registration

revocation, or in the alternative, the installation of an ignition interlock device, which was not applicable when Hamm was decided, the Court does not find, under Blanton, that this penalty reflects the need for a jury trial, since the ten-year registration revocation is presumably concurrent with the ten-year license suspension, and the alternative, an ignition interlock device, will not impact driving privileges as long as the driver's blood alcohol level is not above a certain level.  See N.J.S.A. 39:4-50 (2004).

The Court thus finds that the Appellate Division properly relied on the Supreme Court of New Jersey's analysis under Blanton, in State v. Hamm.  Furthermore, the Court finds that the standard set forth in Section 2254(d)(1) has not been met, because the Appellate Division's denial of Petitioner's federal claim for a jury trial was not contrary to the Supreme Court's holding in Blanton, nor was it an unreasonable application of Blanton.  Petitioner is therefore not entitled to habeas relief.

## IV.   CONCLUSION

For the reasons set forth above, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

/s/ Freda L. Wolfson

The Honorable Freda L. Wolfson
United States District Judge

Date:   December 13, 2006

14